| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 11-363 (JRT/AJB) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| DEBORAH MAE CARLSON, | |
| Defendant. | |

Jeffrey S. Paulsen, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Douglas Olson and Reynaldo A. Aligada, Jr., Assistant Federal Defenders, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

Deborah Mae Carlson has been charged with mail fraud. Carlson seeks the suppression of evidence seized in her home, pursuant to a search warrant, because she asserts that probable cause did not support the warrant. In a Report and Recommendation dated February 7, 2012, United States Magistrate Judge Arthur J. Boylan recommended that the Court deny Carlson's motion to suppress because the warrant was supported by probable cause and, even if there was no probable cause, the good faith exception applied. (Docket No. 35.) This matter is before the Court on Carlson's timely objections to the Report and Recommendation ("R&R"). The Court reviews *de novo* those portions of the R&R to which Carlson objects. *See* 28 U.S.C. § 636(b)(1)(C); D. Minn. L.R. 72.2.

Because the Court finds the warrant was supported by probable cause, the Court will overrule Carlson's objections and will adopt the Report and Recommendation of the Magistrate Judge.

## BACKGROUND[1]

On June 10, 2010, the Dakota County District Court issued a search warrant as the result of an application and supporting affidavit filed by Lakeville Police Department Detective Dave Watson. (Hr'g Ex. 1.) Watson was a seventeen year veteran of the police force and an eleven year veteran of the investigative unit, and he stated that he was "currently working a terroristic threats case." (*Id.*)

The challenged warrant authorized the search of Carlson's home for "Ginsu Knives, Type Writer, ribbon(s) . . . type writer paper, Money Mailers, and any handwriting samples or documents that relate to Southfork Animal Hospital or Dr. Belisle . . . cloth gloves . . . and clothing material that may contain blue, red, or black fibers." (*Id.*) The supporting affidavit alleged the following:

- On March 4, 2010, the Southfork Animal Hospital ("Animal Hospital") received two letters from a person who claimed to be a female employee threatening to abduct and sexually assault Dr. Belisle.

---

[1] The Court only recites the facts necessary to rule on Carlson's specific objections to the R&R. The R&R contains a more detailed factual background. (*See* R&R at 1-3.)

- From March 4, 2010 to June 10, 2010, the Animal Hospital received fifteen additional letters containing threats against the doctor or other staff. In each letter, the unknown writer noted that he or she "secretly loves Dr. Belisle."
- On March 20, 2010, a Ginsu knife and a threatening letter were found in the Animal Hospital mailbox.
- In the ensuing investigation, Carlson, a client of the hospital, and other staff members were questioned. Carlson submitted to a search of her residence, and no "items associated with the case were located," but the house was "extremely cluttered" and had a "foul odor."
- On June 7, 2010, an informant – and former co-worker of Carlson – notified the police that Carlson "had a 'crush' on Dr. Belisle."
- On June 9, 2010, Dr. Belisle called Carlson at her home number regarding a medical question. Carlson invited the doctor to lunch. When Dr. Belisle declined, Carlson stated that she would kill herself and said that she was cutting her wrists. Dr. Belisle called 911, and the responding police officers found Carlson at the Animal Hospital and observed numerous cuts on her wrists. Carlson admitted that she was upset over the doctor's rejection but denied any involvement with the letters.
- The police submitted the stamps from the letters for laboratory analysis, and the technicians reported finding "blue, red, and black fibers" on the back of the stamps.

(*Id.*)

The Magistrate Judge concluded that probable cause supported the issuance of the warrant and, even if there was no probable cause, the evidence collected was admissible under the good faith exception. Carlson objects to both determinations.

## ANALYSIS

I.  **STANDARD OF REVIEW**

A search warrant must be based upon a finding that there is probable cause to believe that evidence of a crime will be found in the place searched. *See United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). Probable cause exists if, considering the totality of the circumstances, a reasonable person could conclude that there is a "fair probability" that the object of the search warrant may be found in the place searched. *United States v. Fladten,* 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). "[T]he duty of a reviewing court is simply to ensure that the [issuing judge] had a substantial basis for concluding that probable cause existed." *Gates,* 462 U.S. at 238-39 (internal quotation marks and citation omitted); *see also United States v. LaMorie,* 100 F.3d 547, 552 (8th Cir. 1996). Moreover, a court "may properly rely on normal inferences drawn by the surrounding circumstances and the allegations of facts contained in the affidavit." *United States v. Carlson,* 697 F.2d 231, 238 (8th Cir. 1983) (internal quotation marks omitted).

## II. CARLSON'S OBJECTIONS

### A. Probable Cause

Carlson argues that the search warrant issued without probable cause because there was an insufficient "nexus" between Carlson's home and the items to be seized. Carlson also objects to the R&R's conclusion that the prior consent search did not alter the probable cause analysis.

The Magistrate Judge's determined that there was "abundant evidence in the warrant affidavit" to support a connection between Carlson and the threatening letters, and Carlson does not challenge that determination. (*See* R&R at 3.) Rather, Carlson asserts that the affidavit did not provide probable cause for the search of her **home**. *See, e.g.*, *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (requiring establishment of a nexus between the items and the place to be searched before a warrant can properly issue). The Court disagrees. First, the warrant stated with particularity the items to be seized, and each of those items was connected with the threats on the Animal Hospital. Second, probable cause existed if there was a "fair probability" that any of those items could be found in Carlson's home. *Fladten,* 230 F.3d at 1085. Several of those items, including a kitchen knife and clothing, are common household articles, more likely to be in Carlson's home than elsewhere. Given the "totality of the circumstances," including Carlson's threatening phone call to the Animal Hospital from her home, there was at least a "fair probability" that material related to her threats on the animal hospital would be found at her home. *United States v. Thompson,* 210 F.3d 855, 860 (8th Cir. 2000).

The prior consent search – during which no evidence was seized – is irrelevant. First, there is nothing to suggest the scope of the prior search was exactly the same as the search authorized by the warrant. Second, failure to find items during a prior search does not destroy probable cause for a subsequent search, if there is reason to believe the evidence could have been overlooked. *See United States v. Blom*, 242 F.3d 799, 807 (8th Cir. 2001). Here, the affidavit indicated that the home was extremely cluttered, making it likely that relevant evidence was overlooked. Third, even if the evidence was not in Carlson's home at the time of the prior search, that absence is immaterial. *See United States v. Tagbering*, 985 F.2d 946, 950 (8th Cir. 1993) (holding that evidence does not need to be at the location to be searched at the time the warrant issues, so long as there was probable cause to support a belief that it will be there when the warrant is executed). The Court finds that the affidavit as a whole supported a conclusion that the items listed were likely to be in Carlson's home at the time the warrant was executed, and the warrant was, therefore, supported by probable cause.

### B. Good Faith Exception

Even if the search warrant lacked probable cause, the disputed evidence would be admissible because it was objectively reasonable for the officers executing the search warrant to have relied in good faith on the validity of the warrant. *United States v. Leon*, 468 U.S. 897, 922-23 (1984). Carlson asserts that the warrant was so lacking in probable cause that the good faith exception should not apply, particularly because Watson knew a consent search had been conducted months earlier. As discussed above, the warrant

contained evidence of a nexus between the items sought and the place to be searched. "An officer executing a search warrant may rely [o]n the permissibility of the issuing judge's inference that such a nexus exists when that inference has common sense appeal." *United States v. Houston*, 665 F.3d 991, 995 (8th Cir. 2012) (internal quotation marks omitted). The Court concludes that the warrant was facially valid, the good faith exception applies, and the search was lawful.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** the defendant's objections [Docket No. 36] and **ADOPTS** the Magistrate Judge's Report and Recommendation dated February 7, 2012 [Docket No. 35]. **IT IS HEREBY ORDERED** that Carlson's Motion to Suppress Evidence Obtained as a Result of a Search and Seizure [Docket No. 21] is **DENIED**.

DATED: March 12, 2012            ____s/ John R. Tunheim____
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                                      United States District Judge